```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
UNITED STATES OF AMERICA             :
                                     :
                                     :           08cr709 (DLC)
            -v-                      :
                                     :           OPINION AND ORDER
MARTIN SMELING NUNEZ,                :
                                     :
                      Defendant.     :
                                     :
------------------------------------ X
```

APPEARANCES

For the United States of America:
United States Attorney
Southern District of New York
Geoffrey S. Berman
Andrew A. Rohrbach
One Saint Andrew's Plaza
New York, NY 10007

For the defendant:
The Legal Aid Society
Edward Zabola
118-21 Queens Boulevard, Suite 504
Forest Hills, NY 11375

DENISE COTE, District Judge:

Approximately ten years after his conviction, Martin Smeling Nunez ("Nunez") has filed a petition for a writ of error coram nobis to vacate his plea of guilty and conviction. Nunez was sentenced on February 6, 2009 principally to fifty-seven months' imprisonment to be followed by a five-year term of supervised release. His term of supervised release ended in July 2017. Faced with a denaturalization proceeding, Nunez now

challenges that 2009 federal conviction.  For the following reasons, the petition is denied.

## Background

A statutory condition of receiving citizenship is that the applicant establish that he has not committed a crime of "moral turpitude" during "the five years immediately preceding the date of filing his application" for citizenship and "up to the time of admission to citizenship" (the "Statutory Period").  8 U.S.C. § 1427(a); 8 C.F.R. Part 316.10.  An applicant cannot establish good moral character if, during the Statutory Period, he was convicted of a controlled substance violation or if he provided false testimony under oath in order to obtain citizenship.  8 U.S.C. §§ 1101(f)(3), (6).

Nunez filed his application for citizenship on May 7, 2007.  On November 29, 2007, a United States Citizenship and Immigration Services ("USCIS") officer interviewed Nunez under oath in connection with his application.  Nunez's application was approved on November 30, 2007 and he was granted United States citizenship on January 11, 2008.  For Nunez, the Statutory Period during which he was required to establish good character ran from May 7, 2002 through January 11, 2008, the day he was naturalized.  Before taking the Oath of Citizenship on January 11, 2008, Nunez executed USCIS Form N-445 ("N-445").  In

2

the N-445, Nunez certified that he had not "knowingly committed any crime or offense [] for which [he had] not been arrested" or "illicitly trafficked in drugs" following his interview for naturalization on November 29, 2007.

On July 1, 2008, Nunez was arrested and presented on an arrest complaint. On July 31, 2008, Nunez was indicted for participation in a conspiracy that was alleged to have existed from at least November 2007 to June 2008 to distribute heroin and crack cocaine. The overt acts in the indictment included Nunez attending a cockfight in November 2007, selling heroin on January 10 and 25, 2008, and selling crack cocaine on June 23, 2008.

On October 22, 2008, Nunez pleaded guilty to a one-count superseding indictment charging him with conspiring to distribute and possess with intent to distribute heroin and crack cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. Nunez swore under oath that he was satisfied with his attorney's representation. He represented that he was a citizen of this country.

In allocuting on October 22 to his criminal activity, Nunez stated that he facilitated a sale of one-hundred grams of heroin but did not remember the exact date that had happened. After consulting with his counsel, Nunez explained: "It was around

3

like eight months ago, around there.  I don't remember exactly the time."  When asked whether it was "towards the beginning of [2008]," Nunez responded "Probably the beginning of [2008] or the ending of [2007], somewhere around there."

The Presentence Report ("PSR") explained that Nunez and a cooperating witness had begun discussing Nunez selling heroin to the witness in November 2007.  The witness recorded Nunez discussing these sales in early January 2008.  On January 10, 2008, Nunez was recorded selling 35 grams of heroin to the witness and discussing a second sale.  On January 25, Nunez sold 70 grams of heroin to the witness.  The PSR added that on June 23, Nunez sold approximately 99 grams of crack cocaine.

On February 6, 2009, Nunez was sentenced to a fifty-seven-month term of imprisonment to be followed by five years of supervised release.  Because of his safety-valve proffer to the Government, in which he was required to convey all information in his possession concerning the offenses that were part of the course of conduct or a common scheme or plan with the offense of conviction, Nunez did not face a mandatory minimum term of ten years' imprisonment and his guidelines range was also adjusted downward by two levels.  Nunez's counsel indicated at sentence that the defendant had no objections to the PSR.

Following his conviction, Nunez brought the following motions or petitions for a sentencing adjustment.  On August 2, 2010, Nunez's petition pursuant to 28 U.S.C. § 2255 was denied.  <u>Nunez v. United States</u>, No. 08 CR. 709-01 (DLC), 2010 WL 3023986, at *1 (S.D.N.Y. Aug. 2, 2010).  In that petition, Nunez, having retained new counsel, asserted that his sentencing counsel was ineffective when he failed to seek a downward departure from the sentencing guidelines range.  On April 20, 2012, pursuant to 18 U.S.C. § 3582(c)(2), Nunez was resentenced to forty-seven months' imprisonment.  On October 24, 2016, Nunez's <u>pro se</u> motion for early termination of supervised release was denied.  On December 12, 2016, Nunez's motion for reconsideration of the October 24 Order was denied.  On July 19, 2017, Nunez completed his term of supervised release.

On June 24, 2016, the United States Attorney's Office for the Eastern District of New York initiated civil denaturalization proceedings against Nunez pursuant to 8 U.S.C. § 1451.  The Government alleged that Nunez's criminal activity violated the statute's good moral character requirement and his failure to disclose that activity meant that he illegally procured lawful status.  On March 21, 2019, the District Court for the Eastern District of New York denied the Government's motion for judgment on the pleadings.  <u>United States v. Nunez</u>,

No. 16-CV-3485 (FB), 2019 WL 1298268, at *3 (E.D.N.Y. Mar. 21, 2019).  In the midst of discovery in the Eastern District of New York action, Nunez filed the instant petition before this Court.  On October 31, the Eastern District court stayed the denaturalization proceedings to permit resolution of this petition.

In his petition, Nunez does not deny that he was engaged in criminal conduct between November 2007 and January 10, 2008.  He does assert that his attorney incorrectly assured him that his plea carried no immigration consequences because he was a U.S. citizen.  He contends that, if he had been advised that he might lose his citizenship through an entry of a plea of guilty to criminal conduct that occurred before January 11, he "would have requested that [his attorney] negotiate a plea that did not require me to admit to crimes prior to January 11, 2008."  On December 6, the Government opposed the instant petition.  On December 19, Nunez submitted his reply.

### Discussion

"A writ of error coram nobis is an extraordinary remedy, typically available only when habeas relief is unwarranted because the petitioner is no longer in custody."  Kovacs v. United States, 744 F.3d 44, 49 (2d Cir. 2014) (citation omitted).  "[T]o obtain coram nobis relief a petitioner must

6

demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Id. at 50. "[T]he petitioner's conviction [is] presumed to be correct, and the burden rests on the accused to show otherwise." Foont v. United States, 93 F.3d 76, 78-79 (2d Cir. 1996). "Ineffective assistance of counsel, including during the plea-bargaining process, is a circumstance compelling the grant of a timely application for coram nobis relief." Doe v. United States, 915 F.3d 905, 910 (2d Cir. 2019) (citation omitted).

The petition turns on whether there are circumstances compelling that Nunez's conviction be vacated.[1] Nunez contends that his attorney's ineffective assistance provides those circumstances. "To prove ineffective assistance, a petitioner must show that defense counsel's performance was objectively unreasonable and that the deficient performance prejudiced the defense." Doe, 915 F.3d at 910 (citation omitted). As to the first prong, a "[p]etitioner establishes that counsel's performance was objectively unreasonable if it was outside the

---

[1] The Government does not oppose Nunez's motion on the grounds that he has failed to satisfy either the second or third requirements for the writ to issue.

7

wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. 668, 690 (1984) (citation omitted).  If counsel's performance was deficient, Nunez must then "affirmatively prove prejudice arising from counsel's allegedly deficient representation." Cornell v. Kirkpatrick, 665 F.3d 369, 375 (2d Cir. 2011) (citation omitted).  To establish prejudice due to counsel's deficient performance in the context of a plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Where the petitioner asserts that his counsel was ineffective for inaccurately advising him about the immigration consequences of his plea, he must show both that "he placed particular emphasis on immigration consequences in deciding whether or not to plead guilty" and that "but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." Doe, 915 F.3d at 911.  In the context of a plea agreement that later brings negative immigration consequences, a petitioner must "demonstrate a reasonable probability that the prosecution would have accepted, and the court would have approved, a deal that

had no adverse effect on [his] immigration status." Kovacs, 744 F.3d at 52.

Nunez fails to establish that he was prejudiced from the alleged misconduct by his counsel. First, Nunez has not proven that a more favorable outcome was available. Nunez does not suggest that he had any realistic chance at obtaining an acquittal if he proceeded to trial. As described in the PSR, the Government possessed recordings of Nunez engaging in drug sales with an FBI confidential witness, including one sale before he was naturalized. Nunez has not identified an affirmative defense that could have rebutted the Government's evidence had he proceeded to trial. See Lee v. United States, 137 S. Ct. 1958, 1966 (2017) ("A defendant without any viable defense will . . . rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial."). Even now, Nunez does not deny that he engaged in the criminal conduct described in the PSR, including during the period before he became a citizen.

Furthermore, Nunez has not shown that he could have avoided admitting to his pre-naturalization criminal conduct without also receiving a far longer prison term. The principal benefit of Nunez's plea agreement was the avoidance of the 120-month mandatory minimum term of imprisonment because he had qualified

9

for relief under the statutory safety valve.  18 U.S.C. § 3553(f).  Pursuant to § 3553(f)(5), a condition of that reduction was that Nunez provide the Government with "all information and evidence . . . concerning the offense."  That included the information that now forms the basis of the denaturalization complaint.  Without the safety valve and its required disclosure, Nunez faced a prison term more than double of that imposed.  The mandatory minimum term of imprisonment which he avoided was "markedly harsher" than the sentence he received under the plea arrangement.  Lee, 137 S.Ct. at 1968-69.

Finally, Nunez has not shown that the Government would have considered a plea arrangement that ignored Nunez's pre-naturalization activities.  For this reason as well, Nunez has not met his burden of demonstrating that he was prejudiced by sentencing counsel not seeking such an arrangement.

Nunez argues that the infrequency with which the Government pursued denaturalization in 2008 means that prosecutors would have accommodated an agreement that did not require Nunez to admit to conduct that contradicted his statements on the N-445 naturalization form.  Nunez's post hoc speculation is not evidence that the Government would have acquiesced to such a request.  This assertion also ignores the context of his plea.  Again, Nunez participated in a safety-valve proffer in which he

had to describe his criminal conduct related to the offense of conviction to obtain a lesser sentence.  That proffer could only succeed if Nunez admitted to participating in the conduct for which the Government had recorded evidence, which included his criminal conduct before Nunez became a citizen.

Because Nunez has not demonstrated that a more favorable agreement was available and acceptable to the Government, he has not shown that he was prejudiced by his attorney's performance, even assuming he could establish that that performance was deficient.  A writ of error coram nobis is therefore not required to achieve justice.

## Conclusion

Nunez's October 25, 2019 motion for a writ of error coram nobis is denied.  Nunez has not made a substantial showing of a denial of a federal right and, therefore, a certificate of appealability shall not be granted.  Hoffler v. Bezio, 726 F.3d 144, 154 (2d Cir. 2013); Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriquez v. Scully, 905 F.2d 24, 24 (2d Cir. 1990).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Opinion and Order would not be taken in good faith.

Coppedge v. United States, 369 U.S. 438, 445 (1962).

Dated:   New York, New York
         April 30, 2020

                                                   DENISE COTE
                                  United States District Judge